Steve Elzinga
Oregon Bar No. 123102
*Designated Local Counsel*
SHERMAN, SHERMAN, JOHNNIE &
HOYT, LLP
693 Chemeketa St.
NE Salem, OR 97301
Telephone: 503-364-2281
steve@shermlaw.com

David A. Cortman*
GA Bar No. 188810
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
dcortman@ADFlegal.org

Ryan J. Tucker*
AZ Bar No. 034382
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
rtucker@adflegal.org

J. Caleb Dalton*
Virginia Bar Number: 83790
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, D.C. 20001
Telephone: (202) 393–8690
cdalton@ADFlegal.org

*Pro Hac Vice application
concurrently filed*

## IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| EDGEWATER CHRISTIAN FELLOWSHIP; PASTOR MATTHEW HEVERLY; ROSEBURG CHURCH OF GOD OF PROPHECY; and PASTOR ROBERT MILLER, <br><br> *Plaintiffs,* <br><br> v. <br><br> GOVERNOR KATHERINE BROWN, in her official capacity; OREGON STATE POLICE SUPERINTENDENT TRAVIS HAMPTON, in his official capacity; OREGON HEALTH AUTHORITY DIRECTOR PATRICK ALLEN, in his official capacity; JOSEPHINE COUNTY SHERIFF, DAVID DANIEL, in his official capacity; DOUGLAS COUNTY SHERIFF JOHN HANLIN, in his official capacity; <br><br> *Defendants.* | Civil Case No. 6:20-cv-00831 <br><br><br><br> **PLAINTIFFS' VERIFIED COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs, Edgewater Christian Fellowship, Pastor Matthew Heverly, Roseburg Church of God of Prophecy, and Pastor Robert Miller by and through counsel, and for the Verified Complaint against Defendants, hereby state as follows:

## INTRODUCTION

1.    In Douglas County Oregon, Pastor Miller may be jailed for going to church with twenty-five other people on a Sunday morning, but can join those same people and more at a dine-in restaurant for Sunday lunch with no penalty. This is irrational and unconstitutional.

2.    Under Governor Brown's Executive Order 20-25 (the "Religious Assembly Ban") Oregonians in Josephine County may workout in a gym or participate in fitness classes in spaces up to max capacity with social distancing, but if they hold or attend a religious service with twenty-six people observing social distancing in the very same room (even one with capacity to seat over 1000) they are subject to a $1,250 fine and jail time of up to thirty days.

3.    Under the Religious Assembly Ban, a church auditorium could host a *gym class* of any size with social distancing, but the same auditorium is limited to twenty-five people for church services.

4.    While responding to crises can be difficult, this case is not. Crises do not suspend the Constitution and there is no legitimate, much less compelling, justification for banning church services of twenty-six or more even with social distancing and health and safety protocols while allowing gyms, restaurants, retail establishments, malls, and more to fill to social distancing capacity.

5.    The Constitution forbids the government from prohibiting the free exercise of religion—which is exactly what the Governor's order does while allowing larger assemblies for secular purposes (e.g. "fitness classes"). Because the Governor's order threatens significant jail time and penalties for anyone who meets for a church

service in violation of her order, a temporary restraining order and injunction are necessary to preserve Plaintiffs' constitutional rights.

### JURISDICTION & VENUE

6.    This is a civil rights action that raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

7.    This Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

8.    This Court has authority to award the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and FED. R. CIV. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

9.    Venue is proper in this district and this division pursuant to 28 U.S.C. § 1391(b) because some Defendants reside in this district and because the acts giving rise to this action occurred in this district and this division.

### PLAINTIFFS

10.  Plaintiff Edgewater Christian Fellowship is a nonprofit church organized exclusively for religious purposes within the meaning of § 501(c)(3) of the Internal Revenue Code. The Church is in Grants Pass, Oregon (Josephine County).

11.  Plaintiff Matthew Heverly is the lead pastor of Edgewater Christian Fellowship and is a resident of Josephine County, Oregon.

12.  Plaintiff Roseburg Church of God of Prophecy is a nonprofit church organized exclusively for religious purposes within the meaning of § 501(c)(3) of the Internal Revenue Code. The Church is in Roseburg, Oregon (Douglas County).

13.  Plaintiff Robert ("Bob") Miller is the pastor of Roseburg Church of God of Prophecy and a resident of Douglas County, Oregon.

14.  Unless otherwise specified, the Churches and Pastor Miller are collectively

referred to herein as "the Church" or "Plaintiffs."

<u>**DEFENDANTS**</u>

15.   Defendant Katherine Brown is the Governor of Oregon and is sued in her official capacity only.

16.   Defendant Brown serves as the chief executive of the state and is responsible for issuing and enforcing the Religious Assembly Ban.

17.   Defendant Brown has the authority to rescind or modify the Religious Assembly Ban.

18.   Defendant Travis Hampton is the Superintendent of Oregon State Police and is sued in his official capacity only.

19.   The Oregon State Police serves as the lead agency for the state law enforcement of Defendant Brown's Religious Assembly Ban.

20.   The Oregon State Police are authorized by state law to enforce the Religious Assembly Ban.

21.   Defendant Hampton has the power, both personally and through his subordinates, to enforce the Religious Assembly Ban.

22.   Defendant Patrick Allen is the Director of the Oregon Health Authority and is sued in his official capacity only.

23.   Defendant Allen issued or authorized administrative rules and guidance challenged herein and has the authority to revise or rescind the polices.

24.   Defendant David Daniel is the Sheriff of Josephine County and is sued in his official capacity only.

25.   As Sheriff of Josephine County, Defendant Daniel has the power, both personally and through his subordinates, to enforce the Religious Assembly Ban.

26.   Defendant John Hanlin is the Sheriff of Douglas County and is sued in his official capacity only.

27.   As Sheriff of Douglas County, Defendant Hanlin has the power, both personally and through his subordinates, to enforce the Religious Assembly Ban.

<u>FACTUAL ALLEGATIONS</u>

**Edgewater Christian Fellowship**

28.   Edgewater Christian Fellowship has operated as a Christian church in Grants Pass, Oregon since 2005.

29.   Edgewater Christian Fellowship believes that the Bible is the inspired Word of God and infallible rule of faith and practice.

30.   Thus, the Bible is the foundation upon which the Edgewater Christian Fellowship operates and is the basis on which it is governed.

31.   Edgewater Christian Fellowship believes, among other things, that the Bible commands Christians to gather together in person for corporate prayer, worship, and fellowship and that such assembly is necessary and good for the Church and its members' spiritual growth.

32.   In compliance with a prior order from the Governor, Edgewater Christian Fellowship last held in-person services on March 15, 2020 and limited its service to 250.

33.   On March 17, 2020, the Church temporarily suspended in-person worship services and began conducting services online.

34.   As of May 24, 2020, Josephine County had no active COVID-19 cases and had only recorded 25 total cases since the outbreak.

35.   A true and accurate copy of the Josephine County Health Department May 24, 2020 update is attached as Exhibit 1.

36.   Although the Church continues to comply with the Governor's orders, after not meeting in person for more than two months, the Church believes it is called to resume in-person worship services, consistent with its religious beliefs about corporate prayer, worship, and fellowship.

37.   The Church sincerely believes that online services and drive-in services do not fully meet the Bible's requirement that the Church meet together in person for corporate worship.

38.   Despite the minimal risk in Josephine County, the Governor's Religious Assembly Ban is still preventing the Church from resuming in-person worship services.

39.   Limiting meetings to twenty-five or less would require the church to hold approximately 60 separate services and would require the Church to exclude many members who wish to attend.

### Roseburg Church of God of Prophecy

40.   Roseburg Church of God of Prophecy has operated as a Christian church in Roseburg (Douglas County), Oregon since 1971.

41.   Roseburg Church of God of Prophecy believes that the Bible is the inspired Word of God and infallible rule of faith and practice.

42.   Thus, the Bible is the foundation upon which the Church operates and is the basis on which it is governed.

43.   Roseburg Church of God of Prophecy believes, among other things, that the Bible commands Christians to gather together in person for corporate prayer, worship, and fellowship and that such assembly is necessary and good for the Church and its members' spiritual growth.

44.   In compliance with a prior order from the Governor, Roseburg Church of God of Prophecy last held in-person services on March 15, 2020.

45.   On March 16, 2020, the Church temporarily suspended in-person worship services and began conducting services online.

46.   As of May 24, 2020, since March 8, 2020, there have only been twenty-five recorded cases of COVID-19 in Douglas county.

47.   Of those, twenty-three have fully recovered, one is currently hospitalized, and one is at home.

48.   A true and accurate copy of the May 24, 2020 Douglas County COVID-19 Response Team Case and Daily Local Update is attached as Exhibit 2.

49.   Although Roseburg Church of God of Prophecy continues to comply with the Governor's orders, after not meeting in person for more than two months, the Church believes it is called to resume in-person worship services, consistent with its religious beliefs about corporate prayer, worship, and fellowship.

50.   At least 10 active members (in six families) of Roseburg Church of God of Prophecy who regularly attended service when it was held in person are unable to participate in online services.

51.   Five of the families are unable to participate due to lack of internet access and one is unable to participate due to privacy concerns related to "Zoom Bombing."

52.   Roseburg Church of God sincerely believes that online services and drive-in services do not fully meet the Bible's requirement that the Church meet together in person for corporate worship.

53.   Despite the minimal risk in Douglas County, the Governor's Religious Assembly Ban is still preventing the Church from resuming in-person worship services.

54.   Limiting meetings to twenty-five or less would require the Church to exclude many members who wish to attend.

### The Religious Assembly Ban

55.   On May 14, 2020, Defendant Brown signed, under color of state law, Executive Order 20-25 (the "Religious Assembly Ban" or "the Ban").

56.   A true and accurate copy of Executive Order 20-25 is attached as Exhibit 3.

57.    The Religious Assembly Ban repeals and replaces prior executive orders that closed business and imposed travel restrictions and provides for easing of restrictions that were in place in those orders over three phases.

58.    As of May 26, 2020, all but two counties (Washington, and Multnomah) in the state have entered "Phase I."

59.    Douglas County is in Phase I.

60.    Josephine County is in Phase I.

61.    The Religious Assembly Ban orders that even if a county has entered Phase I, "[a]ll cultural, civic, and faith-based gatherings of more than 25 people are prohibited."

62.    On May 12, 2020, the Governor's Office hosted a "COVID-19 Faith Leader Webinar" at which guidance was given to faith leaders regarding Phase I.

63.    At the webinar, Faith Leaders were told that during Phase I church services must be limited "to 25 and be able to maintain at least six feet of distance between people."

### Exceptions to the Religious Assembly Ban Under Phase I

64.    The same order that bans church meetings of over twenty-five, regardless of capacity, permits many businesses to open to capacity under Phase I so long as they maintain social distancing.

65.    The Ban specifically states that it does "not apply to workplaces, grocery stores, retail stores, convenience stores, banks and credit unions, gas stations, hotels or motels, health care facilities, pharmacies, child care facilities, schools, higher education institutions, and state or local government, which are subject to other directives."

66.    Notably, retail stores that are able to open under the Ban include recreational marijuana shops which are illegal under federal law, and shops that

sell smoking products that the Oregon Health Authority has found to increase risk of COVID-19 complications.

67.    The "other directives" permit retail establishments, ski resorts, offices, manufacturing plants, and other business locations to open with suggested precautions but no cap on the number of people like the Religious Assembly Ban.

68.    For example, Defendant Brown's various orders related to COVID-19 have always permitted large manufacturing plants to remain open with no limit on the number of persons gathered in the manufacturing facility.

69.    Manufacturing plants such as Intel, Boeing, Gunderson, Daimler, and others that gather hundreds, and in some cases thousands, of employees at a time in the same facility remain open and operating within the state with no limit on the number of persons gathered in the manufacturing facility.

70.    Open air markets such as the Portland Farmer's Market and the Salem Saturday Market remain open with no specific limit on the number of persons gathered.

71.    The Portland International Airport remains open and operation where large groups of passengers congregate in terminals with no specific limit on the number of persons gathered.

72.    The Clackamas Town Center is open and operating with hundreds of vendor employees and visitors with no specific limit on the number of persons gathered.

73.    In addition, the Ban and associated guidance specifically allows gatherings of large groups in entities such as malls, gyms, restaurants, clubs, and sports bars with no specific limit on the number of persons gathered.

74.    The Religious Assembly Ban permits the Oregon Health Authority, at the direction of Defendant Brown, to issue "guidance" which modifies or supplements the Religious Assembly Ban.

75.   The Oregon Health Authority has issued frequently-changing guidance for multiple types of business and organizations.

76.   For example, under the May 17, 2020 guidance for restaurants, the Ban does not restrict the number of patrons who may dine-in at restaurants so long as they maintain social distancing between groups of patrons.

77.   Parties of ten may sit at the same table so long as the table is six feet from other tables.

78.   Thus, one restaurant with three tables is permitted to seat more patrons than Plaintiffs may regardless of the church's ability to maintain social distancing with more than twenty-five congregants.

79.   A true and accurate copy of the May 17, 2020 Oregon Heath Authority guidance for Restaurants is attached as Exhibit 4.

80.   The Religious Assembly Ban allows gyms to fill to as many as they can hold while maintaining social distancing.

81.   A true and accurate copy of the May 18, 2020 Oregon Heath Authority guidance for Gyms is attached as Exhibit 5.

82.   Per the guidance issued by the Oregon Health Authority, authorized by the Governor, fitness classes are only limited by the "maximum occupancy of the room (as long as it ensures six (6) feet of separation)."

83.   But, if a church has a 1000-person auditorium, it is limited to twenty-five attendees no matter how many would fit with social distancing.

**Violating the Religious Assembly Ban is a Class C Misdemeanor**

84.   The Religious Assembly Ban states that "[i]n addition to any other penalty that may be imposed under applicable laws, any person, business, or entity found to be in violation of this Executive Order or any guidance issued by OHA or other state agencies to implement this Executive Order is subject to the penalties described in ORS 401.990."

85.   ORS 401.990 provides that violation of the Religious Assembly Ban is a Class C Misdemeanor.

86.   Class C misdemeanors are punishable by fines and jail time of up to 30 days and $1,250.

87.   On May 21, 2020, the Oregon Health Authority issued Oregon Administrative Rule 333-003-1010, which provides that violation of the Religious Assembly Ban is subject to civil penalties from the Oregon Health Authority or a local public health authority of up to $500 per day per violation.

### The Churches' Plans to Resume In-Person Services

88.   The Churches hope to resume in-person worship services on May 31, 2020 (Pentecost Sunday), but the Religious Assembly Ban makes such services illegal for over twenty-five people and would subject the Churches to possible criminal and civil penalties.

### Edgewater Christian Fellowship Mitigation Plan

89.   Before COVID-19 concerns, Edgewater's weekly attendance was approximately 900 per service for two services.

90.   To ensure proper social distancing, however, the Church plans to limit its in-person Sunday services to only as many as can properly socially distance between family groups.

91.   Edgewater meets in a facility with a maximum capacity of 2850.

92.   In addition, approximately 50% of the main auditorium walls are movable to create an open-air pavilion.

93.   In preparation for resuming in-person worship services, the Church is adopting—and will follow—strict social distancing and health and safety protocols and has drafted a mitigation plan attached as Exhibit 6.

94.   This plan includes, among other provisions:

a. Limiting in-person, indoor services to 250 individuals with social distancing.

b. Holding up to three services each Sunday if necessary to guarantee adequate space for social distancing at each service;

c. Providing at least one hour between services to allow for thorough cleaning and sanitizing of sanctuary, hallways, bathrooms, and common surfaces;

d. Posting signs on walls and floors to direct traffic;

e. Posting signs in the restrooms encouraging proper washing of hands and social distancing;

f. Making hand sanitizer stations easily accessible to attendees;

g. Encouraging the use of masks;

h. Encouraging attendees to arrive no earlier than 20 minutes before service;

i. Directing attendees to sanctuary seating designed to provide over 6-feet of separation between families and individuals;

j. Advising attendees of proper social distancing protocols;

k. Requiring all ushers greeting or directing attendees to wear face coverings;

l. Prohibiting any handouts or items to be passed to attendees during services;

m. Prohibiting snacks or coffee from being served;

n. Directing attendees out of the building to the parking area at the end of each service;

o. Instructing attendees to refrain from congregating in the building.

**Roseburg Church of God of Prophecy Mitigation Plan**

95.   Before COVID-19, the Roseburg Church of God of Prophecy's Sunday services could hold up to 110 people. To ensure proper social distancing, however, the Church plans to limit its in-person Sunday services to only as many as can properly socially distance between family groups—approximately 50.

96.   In preparation for resuming in-person worship services, the Church is adopting—and will follow—strict social distancing and health and safety protocols.

97.   These protocols include the following precautions:

   a.   Holding only Sunday services;

   b.   Holding up to two services each Sunday if necessary to guarantee adequate space for social distancing at each service;

   c.   Providing at least forty-five minutes between services to allow for thorough cleaning and sanitizing of sanctuary, hallways, bathrooms, and common surfaces;

   d.   Posting signs on walls and floors to direct traffic;

   e.   Having separate entry and exit points so that foot traffic flows in one direction;

   f.   Posting signs on restroom doors limiting use to one person at a time;

   g.   Posting signs in the restrooms encouraging proper washing of hands;

   h.   Making hand sanitizer stations easily accessible to attendees;

   i.   Making masks and gloves available to attendees and encouraging individuals to wear them;

   j.   Encouraging attendees to arrive no earlier than 15 minutes before service;

    k.  Directing attendees to sanctuary seating designed to provide 6 feet of separation between families and individuals;

    l.  Advising attendees of proper social distancing protocols;

    m. Requiring all ushers greeting or directing attendees to wear face coverings;

    n.  Prohibiting any handouts or items to be passed to attendees during services;

    o.  Prohibiting snacks or coffee from being served;

    p.  Directing attendees out of the building to the parking area at the end of each service;

    q.  Instructing attendees to refrain from congregating in the building.

98.  In preparation, the Roseburg Church of God of Prophecy has already purchased facemasks, sanitizer, cleaning wipes, and gloves to make available for use during services.

**Defendants Were on Notice Regarding the
Ban's Constitutional Violations**

99.  Defendant Allen and Defendant Brown's attorney received a letter from Attorney Steve Elzinga on May 13, 2020, detailing how the proposed Religious Assembly Ban in Executive Order 20-25 and related guidance violate the Constitution and volunteering to "assist with needed revisions that ensure constitutional compliance while still protecting health and safety."

LEGAL ALLEGATIONS

100. At all times relevant to this Complaint, each and all of the acts and policies alleged herein were attributed to the Defendants who acted under color of a statute, regulation, custom, or usage of the State of Oregon (*i.e.*, under color of state law and authority).

101. Plaintiffs are suffering irreparable harm from the Religious Assembly Ban.

102. Plaintiffs have no adequate or speedy remedy at law to correct or redress the deprivation of their rights by Defendants.

103. Defendants' actions and policies, as set forth above, do not serve any legitimate or compelling state interest and are not narrowly tailored to serve any such interests.

104. Defendants have deprived, and continue to deprive, Plaintiffs of their clearly established rights under the United States Constitution, as set forth in the causes of action below.

105. Unless the policies and conduct of Defendants are enjoined, Plaintiffs will continue to suffer irreparable injury.

106. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to appropriate relief invalidating Defendants' challenged policies and related conduct. Additionally, Plaintiffs are entitled to the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### FIRST CAUSE OF ACTION
### Violation of the First Amendment to the U.S. Constitution (Free Exercise)
### (42 U.S.C. § 1983)

107. The allegations contained in paragraphs 1–106 are incorporated herein by reference.

108.  Plaintiffs' sincerely held religious beliefs teach that the Bible is the inspired Word of God and the sole authority for faith and practice.

109. Plaintiffs sincerely believe that the Bible teaches the necessity of gathering together for corporate prayer and worship and that such assembly is necessary and good for the Church and its members' spiritual growth.

110. The Religious Assembly Ban substantially burdens Plaintiffs' religion by prohibiting them from holding in-person church services with more than 25 individuals present.

111. The Religious Assembly Ban substantially interferes with Plaintiffs' ability

to carry out their religious doctrine, faith, and mission.

112. The Religious Assembly Ban targets, discriminates against, and shows hostility towards churches, including Plaintiffs.

113. The Religious Assembly Ban is neither neutral nor generally applicable.

114. It enforces a system of individualized exemptions and prioritizes secular justifications over religious ones.

115. It is underinclusive because it allows meetings and uses that affect the government interest the same or greater than church services.

116. It targets religious observance because the very same people—in the same seats of the same room at the same time—are violating the law if they are present for a religious purpose but not if they are present for a commercial purpose.

117. The State does not have a compelling reason for prohibiting church services where congregants can otherwise practice adequate social distancing protocol, especially when compared to the vast secular activities exempted under the order, nor has it selected the least restrictive means to further any purported interest.

118. The Religious Assembly Ban violates the Free Exercise Clause of the First Amendment to the United States Constitution, both facially and as applied.

### SECOND CAUSE OF ACTION
### Violation of the First Amendment to the U.S. Constitution
### (Right to Assemble)
### (42 U.S.C. § 1983)

119. The allegations contained in paragraphs 1–118 are incorporated herein by reference.

120. The First Amendment prohibits the State from violating Plaintiffs' right to peaceably assemble.

121. The Religious Assembly Ban violates Plaintiffs' right to peaceably assemble because the ban on in-person services does not serve any legitimate, rational, substantial, or compelling governmental interest.

122. In addition, the State has alternative, less restrictive means to achieve any interest that it might have.

123. The Religious Assembly Ban violates the right to assemble under the First Amendment to the United States Constitution, both facially and as applied.

### THIRD CAUSE OF ACTION
### Violation of the First Amendment to the U.S. Constitution (Free Speech)
### (42 U.S.C. § 1983)

124. The allegations contained in paragraphs 1–123 are incorporated herein by reference.

125. The Religious Assembly Ban violates Plaintiffs' freedom of speech by prohibiting them from engaging in religious speech through their church services, which occur exclusively on private property.

126. The Religious Assembly Ban specifically targets meetings of over twenty-five for the purpose of religious expression, while permitting meetings for the purpose of teaching physical fitness and other secular purposes.

127. The Ban is thus is content and viewpoint-based in violation of the First Amendment.

128. The Religious Assembly Ban gives government officials unbridled discretion with respect to enforcement of the order and the imposition of any penalty, making the order susceptible to both content- and viewpoint-based discrimination.

129. Restricting or punishing Plaintiffs' religious speech does not serve any legitimate, rational, substantial, or compelling governmental interest.

130. The State also has alternative, less restrictive means to achieve any interest that it might have.

131. The Religious Assembly Ban violates the Free Speech Clause of the First Amendment to the United States Constitution, both facially and as applied.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants, and provide Plaintiffs with the following relief:

    A.  Enter a temporary restraining order, preliminary injunction, and permanent injunction prohibiting Defendants from enforcing the portion of Governor's Executive Order 20-25 limiting religious public gatherings to less than twenty-six people, thus allowing Plaintiffs and their congregants to continue to meet for worship while practicing adequate social distancing;

    B.  Enter a judgment declaring that Governor's Executive Order 20-25 violates the U.S. Constitution's Free Exercise, Free Speech, Right to Assemble Clauses;

    C.  Award Plaintiffs' court costs, and reasonable attorney fees; and

    D.  Award such other and further relief as to which Plaintiffs may be entitled.

Respectfully submitted this 26th day of May, 2020.

_s/ Steve Elzinga_

Ryan J. Tucker*
AZ Bar No. 034382
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ  85260
Telephone: (480) 444-0020
rtucker@adflegal.org

Steve Elzinga
Oregon Bar No. 123102
_Designated Local Counsel_
SHERMAN, SHERMAN, JOHNNIE & HOYT, LLP
693 Chemeketa St.
NE Salem, OR 97301
Telephone: 503-364-2281
steve@shermlaw.com

David A. Cortman*
GA Bar No. 188810
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
dcortman@ADFlegal.org

J. Caleb Dalton*
Virginia Bar Number: 83790
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, D.C. 20001
Telephone: (202) 393–8690
cdalton@ADFlegal.org

_Attorneys for Plaintiffs_

**_*Pro Hac Vice application concurrently filed._**

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury for all matters so triable herein.

_s/ Steve Elzinga_
Steve Elzinga
_Attorney for Plaintiffs_

## VERIFICATION

I declare under penalty of perjury that the foregoing Verified Complaint has been examined by me and that the factual allegations therein are true to the best of my knowledge, information, and belief.

Dated: May 26, 2020

_____
Pastor Matthew (Matt) Heverly
Edgewater Christian Fellowship

## VERIFICATION

I declare under penalty of perjury that the foregoing Verified Complaint has been examined by me and that the factual allegations therein are true to the best of my knowledge, information, and belief.

Dated: May 26, 2020

Pastor Robert (Bob) Miller
Roseburg Church of God of Prophecy